# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
Classic Site Solutions, Inc. ) ASBCA Nos. 58375, 58572
)
Under Contract No. W912DR-11-C-0022 )

APPEARANCES FOR THE APPELLANT: Mark S. Dachille, Esq.
Nicole L. Campbell, Esq.
  Huddles Jones Sorteberg & Dachille, P.C.
Columbia, MD

Drew W. Colby, Esq.
  Partridge Snow & Hahn, LLP
Westborough, MA

APPEARANCES FOR THE GOVERNMENT: Thomas H. Gourlay, Jr., Esq.
  Engineer Chief Trial Attorney
William J. Selinsky, Esq.
Scott C. Seufert, Esq.
Richard P. White, Esq.
  Assistant District Counsel
  U.S. Army Engineer District,
  Baltimore

## OPINION BY ADMINISTRATIVE JUDGE CLARKE
## ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

The parties each move for summary judgment in what is referred to as the "soil treatment" claim, ASBCA Nos. 58375, 58572. The contract involved construction of a test track for military vehicles, including tanks, at Aberdeen Proving Ground, Maryland. These particular motions involve questions of contract interpretation relating to whether appellant's schedule in its proposal is binding on the government. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. We grant the government's motion in part and deny appellant's motion.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On 2 February 2011, the U.S. Army Corps of Engineers (COE) issued Request for Proposals No. W912DR-11-R-0021 (RFP 0021) for a project entitled "Automotive Technology Evaluation Facility Phase II" (ATEF Phase II) (R4, tab 5 at 1). The solicitation was issued on Standard Form (SF) 1442 (*id.*). The SF 1442 is a pre-printed

form having various blocks with text and, in some cases, blocks to check and blanks to fill in.

2. SF 1442, Block 11 reads, with blocks checked and blanks filled in, "The Contractor shall begin performance within 10 calendar days and complete it within 425 calendar days after receiving [the] notice to proceed. This performance period is mandatory. (*See* Section 800)." (R4, tab 5 at 1)

3. SF 1442, Block 12A. reads, "THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? (*If "YES," indicate within how many calendar days after award in Item 12B.*)." The "YES" block was checked. Block 12B., "CALENDAR DAYS," has the number "10" entered. (R4, tab 5 at 1) The RFP includes "INFORMATION REGARDING PERFORMANCE AND PAYMENT BONDS – 8(a)" that likewise includes a ten-day period for submission of bonds (R4, tab 5 at 30).

4. SF 1442, Block 13 has four subparagraphs, A. – D. (R4, tab 5 at 1). Subparagraph A. requires that offers be submitted by "01:00 PM local time 08 Mar 2011." Subparagraph C. reads, "All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference." Subparagraph D. reads, "Offers providing less than 120 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected" (*id.*).

5. SF 1442, Block 17 reads:

> The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within _____ calendar days after the date offers are due. (*Insert any number equal to or greater than the minimum requirements stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.*).

(R4, tab 5 at 2) The blank was not filled in by appellant.

6. FAR 52.211-10, COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984) is included in full text in the RFP and reads:

> The Contractor shall be required to (a) commence work under this contract within 10 calendar days after the date the Contractor receives the notice to proceed, (b) prosecute the work diligently,

2

and (c) complete the entire work ready for use not later than 425 calendar days.

(R4, tab 5 at 67)

7. The Proposal Submission Requirements (R4, tab 5 at 98) includes a project management plan (*id.* at 104) that in turn included section 3.5.3, Scheduling, that reads in pertinent part:

> **Scheduling:** Discuss the Offeror's scheduling capabilities and procedures to be used for this project to meet the requirements of Section 01 32 01.00 10 Project Schedule. Include type of scheduling software proposed and background of Lead Scheduler. Submit a Pre-Award Project Schedule as described below and in accordance with applicable provisions of Section 01 32 01.00 10.
>
> Pre-Award Project Schedule: The Offeror shall submit a summary level schedule using the Critical Path Method of calculation, not exceeding 100 activities. The schedule shall demonstrate a reasonable and realistic sequence of activities which represent all work through the entire contract performance period.
>
> The offeror must describe in detail how it will initiate the project; include discussions on important early activities, such as pre-work submittals, site organization, temporary facilities, material deliveries etc. and other key construction activities to ensure completion by the required dates.
>
> The offeror must discuss its scheduling capabilities and procedures to be used for this project, which must include schedule updates, incorporating modifications into the schedule, and other steps to be taken to meet the required completion date. The offeror also must include a discussion of the potential high-risk features (such as the alternative work hours, vehicle traffic, coordination with and completion of work by privatization contractors, acquiring all necessary Permits, encountering contaminated soils and/or munitions and explosives of concerns) of the work that may adversely

3

impact the completion date and the offeror's plan to mitigate those high-risk features.

(*Id.* at 105)

8. RFP Amendment No. 0007 included offeror's requests for information (RFI) and the government's responses. RFI number 6 read, "[w]hat is your current anticipated NTP?" (R4, tab 5 at 177). The government's answer read, "[w]*e are scheduled to award by 31 March 2011*" (*id.*).

9. Specification section 01 32 01, "PROJECT SCHEDULE," included the following:

> PART 3 EXECUTION
>
> 3.1 GENERAL REQUIREMENTS
>
> > Prepare for approval a Project Schedule, as specified herein, pursuant to the Contract Clause, SCHEDULE FOR CONSTRUCTION CONTRACTS. Show in the schedule the sequence in which the Contractor proposes to perform the work and dates on which the Contractor contemplates starting and completing all schedule activities. The scheduling of the entire project, including the design and construction sequences, is required. The scheduling of construction[]design and construction is the responsibility of the Contractor. Contractor management personnel shall actively participate in its development. Subcontractors and suppliers[]Designers, Subcontractors and suppliers working on the project shall also contribute in developing and maintaining an accurate Project Schedule. The schedule must be a forward planning as well as a project monitoring tool.

(Supp. R4, tab 39 at 1)

10. The RFP incorporated FAR 52.236-15, SCHEDULES FOR CONSTRUCTION CONTRACTS (APR 1984) (R4, tab 5 at 43), that reads in pertinent part:

> > (a) The Contractor shall, within five days after the work commences on the contract or another period of time determined by the Contracting Officer, prepare and submit to the Contracting Officer for approval three copies of a

4

practicable schedule showing the order in which the Contractor proposes to perform the work, and the dates on which the Contractor contemplates starting and completing the several salient features of the work (including acquiring materials, plant, and equipment). The schedule shall be in the form of a progress chart of suitable scale to indicate appropriately the percentage of work scheduled for completion by any given date during the period. If the Contractor fails to submit a schedule within the time prescribed, the Contracting Officer may withhold approval of progress payments until the Contractor submits the required schedule.

11. The RFP incorporated FAR 52.215-1, INSTRUCTIONS TO OFFERORS – COMPETITIVE ACQUISITION (JAN 2004) (R4, tab 5 at 25), that reads in pertinent part at paragraph (c)(6):

Offerors may submit modifications to their proposals at any time before the solicitation closing date and time, and may submit modifications in response to an amendment, or to correct a mistake at any time before award.

12. On 8 March 2011 appellant submitted its proposal in response to RFP 0021 in the total "TOTAL ESTIMATED BID AMOUNT"[1] of $13,368,055.67 (R4, tab 9). Appellant's president, Ms. Cheryl Sady, signed the SF 1442 (*id.*). Appellant did not insert a number in the blank in Block 17. In appellant's proposal, Project Management Plan, it identified three stages of construction with the following pertinent comments:

**Stage 1 Construction (Station 95+50 to 177+00)**
With construction anticipated to start in the spring of 2011, we will begin construction of the largest earth moving areas first, to maximize the potential for less rain delays and dryer soil conditions....

**Stage 2 Constructions (Station 21+00 to 96+50)**
This stage has a large quantity of cut to fill earthwork and an import of fill form [sic] the disposal area. With stage 2 beginning in the fall, we can use the mild weather to assist in achieving proper compaction and moisture content....

---

[1] The bid is an "estimate" because in CLINs 0002 and 0003, the government specified the estimated quantity of bituminous concrete that bidders had to use in bidding.

**Stage 3 Constructions (Station 177+00 to 21+00)**
Starting stage 3 in the winter months will allow us to utilize these months to excavate and haul the largest portion of the spoils to the disposal area.

(Supp. R4, tab 38 at 55, 57-58) The Project Management Plan indicated NTP was 9 May 2011 in a ©Primavera Systems, Inc., Critical Path Method (CPM) schedule printout, dated 5 March 2011 (supp. R4, tab 38 at 0063).

13. On 1 April 2011, the COE issued RFP Amendment No. 0008 that substituted various drawings and extended the date for receipt of offers to 8 April 2011 (R4, tab 5 at 178). Appellant submitted a revised proposal on 8 April 2011 that lowered its total estimated price to $12,846,969.00 (R4, tab 10).

14. By letter dated 31 May 2011, Contract No. W912DR-11-C-0022 for the ATEF Phase II project was awarded to CSSI (R4, tab 11). The award package included performance and payment bond forms to be executed and returned "within ten (10) calendar days" (*id.*). CSSI was also informed that it was required to submit satisfactory evidence of insurance before commencement of work (*id.*). The SF 1442 signed by the COE contracting officer awarding the contract included checked Block 29 that read:

> 29. AWARD *(Contractor is not required to sign this document.)*
>
> Your offer on this solicitation, is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary.
>
> REF: W912DR-11-R-0021 thru Amd 0008

(R4, tab 4 at 2)

15. The NTP was issued and received by CSSI on 21 June 2011 (R4, tab 15).

16. On 8 June 2012, CSSI submitted its soil treatment claim to the COE. CSSI claimed $510,795.45 for damages caused by the "late" NTP. (R4, tab 23)

17. CSSI filed a "deemed denial" appeal with the Board on 5 November 2012.

18. The Board docketed the soil treatment claim as ASBCA No. 58375 on 6 November 2012.

19.  COE CO Rifkin issued a final decision on 6 December 2012 denying the soil treatment claim (R4, tab 2).

20.  On 26 February 2013, CSSI appealed the final decision and on 27 February 2013 the soil treatment claim was docketed as ASBCA No. 58572.  ASBCA Nos. 58375 and 58572 were consolidated on 1 March 2013.

## DECISION

*Contentions of the Parties*

CSSI contends that the schedule included in its technical proposal (TP) indicating a 9 May 2011 NTP was accepted by the COE when it awarded the contract to CSSI (app. mot. at 8; SOF ¶ 12).  The NTP was not issued until 21 June 2011 causing delay in the start of performance.  The delay pushed certain excavation work into less favorable weather conditions causing CSSI to use greater quantities of chemical treatment required to attain specified moisture content requirements.  (App. mot. at 2-3)  CSSI claims that the COE is liable for the additional costs because it failed to issue the NTP on 9 May 2011.  In addition, CSSI argues that the COE "never invoked Clause 13.D" because it did "not reject Classic's offer" and thereby "waived Block 13.D by accepting Classic's offer" (app. opp'n at 2, 3).

The COE interprets CSSI's claim to demand delay damages before contract award.  The COE contends that the Board has no jurisdiction over such pre-award disputes (gov't mot. at 22).  The COE also argues that the SF 1442 required that CSSI allow the COE 120 days after the proposal due date to evaluate proposals and award a contract (gov't mot. at 23-24).  COE argues that it did not guarantee a date for the NTP and that it issued the NTP within a reasonable time after award (gov't mot. at 25).  COE argues that after RFP Amendment No. 0008, CSSI had an opportunity to amend its proposal and increase its price due to a later award date, but instead reduced its price (gov't mot. at 26).  Finally, the COE argues that there was nothing in CSSI's proposal that specifically made its proposal contingent on a 9 May 2011 NTP (gov't mot. at 26, 29).

*Discussion*

Based on the decision discussed below, we need not address the COE's argument regarding the nature of CSSI's alleged damages.

We have reviewed each of the cases relied upon by CSSI to support its contention that the COE is bound by the schedule in its TP, and the COE's case-by-case rebuttal.  We agree with the COE that when each case is carefully considered, none of the cases cited by CSSI support its contentions.  In *Pure Water and Ecology Products, Inc.,*

7

ASBCA No. 21153, 77-2 BCA ¶ 12,718, the Navy issued a brand name or equal RFP for shower heads. The Board held that during negotiations the contractor submitted a letter that informed the Navy it intended to provide a different "or equal" shower head. The Board found that the Navy, as a matter of law, was bound by the letter. *Id.* at 61,798-800. No similar circumstances exist in this appeal (app. mot. at 13-14; gov't opp'n at 16-17).

In *F&F Laboratories, Inc.*, ASBCA No. 33007, 89-1 BCA ¶ 21,207, the contractor submitted "attachment 1" that made its offer contingent upon acceptance of its jelly bars that were larger in size than specifications in the RFP. The Board held that since the government failed to inform F&F that the size was unacceptable, it was bound by the contingency. *F&F*, 89-1 BCA ¶ 21,207 at 107,002-03. No similar circumstances exist in this appeal (app. mot. at 14; gov't opp'n at 15).

In *Maggie's Landscaping, Inc.*, ASBCA No. 52462, 04-2 BCA ¶ 32,647, the government awarded a requirements contract for lawn maintenance services at Edgewood Arsenal. CSSI correctly pointed out that the contract incorporated Maggie's Technical Proposal. However, the case does not stand for the proposition CSSI contends because Maggie lost all of its claims except for changes in mowing height, planting of 438 new trees and 3,341 feet of new fencing that were not changes to the TP. *Maggie's*, 04-2 BCA ¶ 32,647 at 161,569. No similar circumstances exist in this appeal (app. mot. at 11-12; gov't opp'n at 13-15).

In *Strand Hunt Construction, Inc.*, ASBCA No. 55905, 13 BCA ¶ 35,287 at 173,177, the issue was the proper interpretation of language where Strand Hunt stated that its "goal is to finish the project by July 1, 2005" but that goal was not enforced by the Board. *Strand Hunt*, 13 BCA ¶ 35,287 at 173,186. No similar circumstances exist in this appeal (app. mot. at 11; gov't opp'n at 12-13).

In *F2M, Inc.*, ASBCA No. 49719, 97-2 BCA ¶ 28,982, the Board considered cross-motions for summary judgment relating to a non-appropriated fund instrumentality contract for the construction of a guest house at Fort Lewis, Washington. The parties stipulated that "a 'significant milestone date' was an Interim Notice to Proceed date of 11 November 1993." *F2M*, 97-2 BCA ¶ 28,982 at 144,330. The award was protested and the NTP was not issued until 29 April 1994. *Id.* The Board denied both motions. The fact that the government stipulated that the interim NTP was a "significant milestone date" distinguishes *F2M* from this case where the government disputes the applicability of the schedule in the proposal.

*Interpretation Analysis*

The motions require the Board to interpret various provisions of the solicitation and contract. We may not consider extrinsic evidence. A motion for summary judgment based on contract interpretation may only be granted if there is no ambiguity requiring

8

reliance on extrinsic evidence. *Dixie Construction Co.*, ASBCA No. 56880, 10-1 BCA ¶ 34,422 at 169,918 ("Legal questions of contract interpretation are amenable to summary resolution, unless there is an ambiguity that requires the weighing of extrinsic evidence."). An ambiguity exists when there are two reasonable interpretations of the language under consideration. *Teg-Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) (When a provision in a contract is susceptible to more than one reasonable interpretation, it is ambiguous, and we may then resort to extrinsic evidence to resolve the ambiguity.). Additionally, summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Any significant doubt over factual issues, and all reasonable inferences, must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); *Dixie*, 10-1 BCA ¶ 34,422 at 169,918.

We consider the relevant provisions of SF 1442 to be clear and unambiguous. Offerors were required to allow the government a minimum of 120 days after proposals were due to award a contract (SOF ¶¶ 4, 5). The initial RFP due date was 8 March 2011 (SOF ¶ 4). Therefore, the government had until 6 July 2011 to award the contract. We consider this fact inconsistent with CSSI's argument that the government was obligated by the schedule in its proposal to issue a NTP by 9 May 2011.

We consider the provisions of solicitation section 3.5.3 Scheduling, to be clear and unambiguous. CSSI was obligated to submit a "summary level" pre-award project schedule that demonstrates a realistic sequence of activities for all work that meets the requirements of specification section 01 32 01.00 10 (SOF ¶ 7).

We consider the provisions of specification section 01 32 01 to be clear and unambiguous. CSSI was to "[p]repare for approval" a project schedule in accordance with the contract clause "SCHEDULE FOR CONSTRUCTION CONTRACTS" that shows the "sequence in which the Contractor proposes to perform the work and dates on which the Contractor contemplates starting and completing all schedule activities" (SOF ¶ 9).

We consider the provisions of FAR 52.236-15, SCHEDULES FOR CONSTRUCTION CONTRACTS (APR 1984) to be clear and unambiguous. CSSI must:

> [W]ithin five days after the work commences on the contract or another period of time determined by the Contracting Officer, prepare and submit to the Contracting Officer for approval three copies of a practicable schedule showing the order in which the Contractor proposes to perform the work, and the dates on which the Contractor contemplates starting

9

and completing the several salient features of the work
(including acquiring materials, plant, and equipment).

(SOF ¶ 10) We interpret this to mean that CSSI must submit a schedule for approval after award. We conclude that this requirement contradicts CSSI's assertion that the COE is bound by the ©Primavera CPM schedule submitted with CSSI's offer before award.

These four documents: the SF 1442; solicitation section 3.5.3 Scheduling; specification section 01 32 01; and FAR 52.236-15, SCHEDULES FOR CONSTRUCTION CONTRACTS (APR 1984), "must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of [their] parts." *NVT Technologies, Inc. v. United States,* 370 F.3d 1153, 1159 (Fed. Cir. 2004). These four documents, when read and harmonized together, have only one reasonable interpretation. CSSI and the other offerors were to submit a preliminary summary level pre-award project schedule for the COE's use in evaluating the proposals to make an award determination. Then, after award, CSSI was to submit a schedule, based on the actual date of award, to the COE for approval. We disagree with CSSI's argument that the government is bound by its "summary level pre-award project schedule," i.e., its 9 May 2011 ©Primavera CPM schedule included in its proposal (SOF ¶ 12).[2]

We also point out that when solicitation Amendment No. 0008 was issued on 1 April 2011 (almost a month after CSSI submitted its offer on 8 March 2011 (SOF ¶ 12)) several facts were obvious. The "scheduled" 31 March 2011 award date had passed (SOF ¶ 8). The date for receipt of offers was extended to 8 April 2011 (SOF ¶ 13). The COE therefore had until 6 August 2011 to award a contract making it highly unlikely that the NTP would be issued on 9 May 2011. Based on Amendment No. 0008, CSSI had an opportunity to increase its price to account for a later NTP date (SOF ¶ 6) but, not only did it fail to do so, it submitted a revised RFP reducing its price (SOF ¶ 13). We also disagree with CSSI's contention that the COE had to "invoke" Clause 13D and "waived" it when it failed to reject CSSI's offer (app. opp'n at 5).

---

[2] We agree that CSSI could have explicitly made its offer contingent on a 9 May 2011 NTP but it did not; if it had, its proposal might have been rejected by the COE.

10

## CONCLUSION

For the reasons stated above, the government's motion is granted in part and CSSI's motion is denied. The soil treatment claim, ASBCA Nos. 58375, 58572, is denied.

Dated: 10 July 2014

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 58375, 58572, Appeals of Classic Site Solutions, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals